IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MINERVA SURGICAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-217-JFB-SRF |
| | ) | |
| HOLOGIC, INC. and CYTYC SURGICAL PRODUCTS, LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

In this patent infringement action filed by plaintiff Minerva Surgical, Inc. ("Minerva") against defendants Hologic, Inc. and Cytyc Surgical Products, LLC (together, "Hologic"), Minerva alleges infringement of United States Patent No. 9,186,208 ("the '208 patent"). (D.I. 1) Presently before the court is the matter of claim construction. This decision sets forth the court's recommendations of constructions for the disputed claim terms discussed in the briefing and at the *Markman* hearing held on January 23, 2019.

### II. BACKGROUND

The '208 patent is directed to a method and system for performing endometrial ablation to treat uterine diseases. ('208 patent, col. 2:6-8) The claimed endometrial ablation device comprises a shaft with an expandable and contractible frame consisting of inner and outer frame elements which expand upon insertion to bring an energy delivery surface into contact with the uterine cavity. (*Id.*, col. 2:8-17) The expanded energy delivery surface then applies energy to the endometrial lining of the uterus. (*Id.*, col. 2:17-19) Following treatment, the physician

deflates the expandable balloon member and collapses the frame to retract the device from the uterine cavity. (*Id.*, col. 11:60-12:2; Fig. 8D)

On April 11, 2017, Minerva filed suit against Hologic in the Northern District of California, alleging that Hologic's NovaSure ADVANCED product infringes Minerva's '208 patent. (D.I. 1, Ex. A) Minerva filed a motion for a preliminary injunction on August 2, 2017. (D.I. 35) The court denied Minerva's motion for a preliminary injunction in an order entered on January 5, 2018. (D.I. 80) In its order, the court discussed the parties' agreed-upon construction for the term "substantially dissimilar material properties" ("SDMP") for purposes of the preliminary injunction motion, and Minerva's subsequent departure from the agreed-upon construction in its reply brief. (*Id.* at 3-4) On January 31, 2018, the parties stipulated to transfer the case to the District of Delaware. (D.I. 85)

### III. LEGAL STANDARD

Construing the claims of a patent presents a question of law, although subsidiary fact finding is sometimes necessary. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837-38 (2015) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 388-90 (1996)). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted). "[T]here is no magic formula or catechism for conducting claim construction." *Id.* at 1324. Instead, the court may attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

The words of the claims "are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question

2

at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted); *see also Eon Corp. IP Holdings v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1320 (Fed. Cir. 2016). Claim terms are typically used consistently throughout the patent, and "usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips*, 415 F.3d at 1314 (observing that "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . . [b]ecause claim terms are normally used consistently throughout the patent . . .").

It is likewise true that "[d]ifferences among claims can also be a useful guide. . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003) (citing *Ecolab Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1375 (Fed. Cir. 2002).

Other intrinsic evidence, including the patent specification, "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316 (citing *CCS Fitness, Inc. v. Brunswick Corp.*,

288 F.3d 1359, 1366 (Fed. Cir. 2002)). It bears emphasis that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (internal quotation marks omitted), *aff'd*, 481 F.3d 1371 (Fed. Cir. 2007). The specification "is not a substitute for, nor can it be used to rewrite, the chosen claim language." *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman*, 52 F.3d at 980. The prosecution history, which is also "intrinsic evidence," "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

A court also may rely on "extrinsic evidence," which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that

4

of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* ("[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court."). Overall, while extrinsic evidence may be useful to the court, it is less reliable than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19.

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007).

## IV. CONSTRUCTION OF DISPUTED TERMS

### A. "substantially dissimilar material properties" ("SDMP") ('208 patent, claims 13, 14, 15, 17, 19, 20, 22)

| Minerva | Hologic | Court |
| --- | --- | --- |
| "different thickness or width and different composition or treatment that provide different spring characteristics to influence the expandable planar triangular shape of the energy delivery surface" | Indefinite | "the inner and outer frame elements have different thickness and different composition" |

5

I recommend that the court adopt a modified version of Minerva's proposed construction, which is consistent with the parties' agreed-upon construction at the preliminary injunction stage, Hologic's proposed construction for the ensuing term "dissimilar material properties," the intrinsic and extrinsic record, and the relevant case authorities.

Hologic contends that the word "substantially" renders the term indefinite because the '208 patent specification fails to provide an objective boundary for measuring the degree of dissimilarity of the material properties. (D.I. 109 at 6-8) However, Federal Circuit precedent establishes that terms of degree are not inherently indefinite if the claim language "provide[s] enough certainty to one of skill in the art when read in the context of the invention." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014); *see also Sonix Tech. Co., Ltd. v. Pub. Int'l, Ltd.*, 844 F.3d 1370, 1378-79 (Fed. Cir. 2017). As discussed below, the specification of the '208 patent contains examples that provide guidance to a person of ordinary skill in the art in determining the scope of the claim language. For this reason, the term "substantially" is not indefinite as it is used in the context of the '208 patent.

The specification of the '208 patent identifies two characteristics qualifying as "substantially dissimilar" characteristics in the context of claim 13: (1) thickness, and (2) composition. ('208 patent, col. 19:32-48) The specification discloses an outer frame element made of 304 SS or 316 SS, with a thickness ranging from 0.004 to 0.012 inches, and distinguishes it from the inner frame element, which is made of NanoFlex®, with a thickness ranging from 0.012 to 0.020 inches. (*Id.*) These boundaries, as illustrated in Figure 21, are sufficient to inform a person of ordinary skill as to the scope of the word "substantially" in the context of the invention. *See Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1345 (Fed. Cir. 2018) (concluding that the specification's description and

6

annotated figures identifying the invention's configuration provided reasonable certainty as to the meaning of the disputed term). The prosecution history provides further support regarding the objective boundaries of the word "substantially" because the examiner found that "[t]he disclosure of the recited frame with inner and outer elements having substantially dissimilar material properties is not found in the prior art of record," noting that "[a]pplicants give criticality to this feature" in the specification. (D.I. 108, Ex. 2 at 9/24/14 Office Action at 9)

The specification defines the function of the invention as "alter[ing] the expanded plan shape of the dielectric membrane structure to correspondingly increase the surface area of the energy delivery surface . . . to optimize energy delivery to engaged tissue." ('208 patent, col. 19:7-11) The Federal Circuit has held that such functional language also "promotes definiteness because it helps bound the scope of the claims by specifying the operations that the [claimed invention] must undertake." *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1232 (Fed. Cir. 2016). The specification explains that "[t]he use of dissimilar frame materials allows for the frame to expand . . . with lateral sides being relatively linear instead of being deeply bowed inwardly," providing a more triangular shape to increase the total surface area of the dielectric in contact with the tissue. ('208 patent, col. 19:48-54) Thus, a person of ordinary skill in the art would understand from the '208 patent specification that the inner and outer frame elements must be configured to increase the surface area of the energy delivery surface, and this goal is achieved by varying the material and the thickness of the inner and outer frame elements.

In this regard, the use of "substantially" in the '208 patent is comparable to the term "visually negligible" in *Sonix Technology Co., Ltd. v. Publications International, Ltd.* There, the Federal Circuit determined that the term "visually negligible" was not indefinite because the written description "includes: (1) a general exemplary design for a visually-negligible indicator,

7

(2) 'requirements for the graphical indicators being negligible to human eyes,' and (3) two specific examples of visually-negligible indicators." 844 F.3d 1370, 1378-79 (Fed. Cir. 2017) (internal citations omitted). In the present case, Figure 21 illustrates the exemplary design for SDMP, and the specification provides specific examples of different materials and thickness ranges to achieve SDMP in the inner and outer frame elements. ('208 patent, Fig. 21; col. 19:32-48)

Likewise, in *Exmark*, the Federal Circuit found that the claimed "elongated and substantially straight [baffle portion]" was not indefinite because the specification provided that the "elongated and straight portion of the baffle must be long enough to at least connect [] two arcuate portions of the baffle," it referred to a "*relatively* straight baffle portion," and it identified the function of the elongated and straight baffle portion to deflect grass cuttings to the next blade. 879 F.3d 1332, 1345-46 (Fed. Cir. 2018) (concluding that "no such numerical precision is required when using such terms of degree."). The specification of the '208 patent provides similar context by describing the purpose of the dissimilar spring characteristics as increasing the surface area of the energy delivery surface, ('208 patent, col. 19:6-10), and identifying examples of varying thickness and material compositions of the frame elements to achieve the stated purpose, (*id.*, col. 19:32-48). A person of ordinary skill in the art, viewing the claim language in light of the specification, would understand the meaning of SDMP with enough certainty to define its scope. *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) ("The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art.").

The cases relied upon by Hologic are distinguishable. In *Cayenne Medical, Inc. v. Medshape, Inc.*, 2016 WL 2606983, at *3-5 (D. Ariz. May 6, 2016), only the patent's dependent

claims and a figure had disclosures relating to the claim term "substantially different construction," and the dependent claims did not limit the possible variations of the claimed device. In contrast, the '208 patent specification expressly recites SDMP in the discussion of Figure 21, and it describes different thickness ranges and material compositions for the inner and outer frame elements. ('208 patent, col. 19:32-48; 19:63-65) In *S.O.I.Tec Silicon on Insulator Technologies, S.A. v. MEMC Electronics Materials, Inc.*, 745 F. Supp. 2d 489, 508 (D. Del. 2010), the specification did not describe a means of measuring the amount of hydrogen diffusing prior to, or during, the claimed thermal annealing. *Id.* at 508-09. In contrast, the specification of the '208 patent describes embodiments indicating the scope of SDMP.

The parties disagree regarding whether the testimony of the '208 patent's inventors, Akos Toth and Csaba Truckai, should be given weight in the indefiniteness findings regarding the word "substantially." (D.I. 109 at 8-10; D.I. 118 at 6-8) I recommend that the court decline to weigh the inventors' testimony in the indefiniteness inquiry. Pursuant to Federal Circuit precedent, an inventor's subjective intent regarding the meaning of a claim is not probative of the claim's objective scope. "It is particularly inappropriate to consider inventor testimony obtained in the context of litigation in assessing validity under section 112, paragraph 2, in view of the absence of probative value of such testimony." *Solomon v. Kimberly Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000) (observing that inventor testimony obtained in the context of litigation is "often a self-serving, after-the-fact attempt to state what should have been part of his or her patent application.").

Turning to the proper construction of the claim term, I recommend that the court reject Minerva's attempt to import "spring characteristics" into the claim. The Northern District of California previously rejected a similar proposal by Minerva in briefing on the motion for a

preliminary injunction, concluding that claim 13 does not contain a limitation relating to "spring characteristics," nor does the specification require it, and efforts to import this limitation from the specification therefore violate basic principles of claim construction. (D.I. 80 at 4) The specification explains that spring characteristics are not required for the frame elements, noting that "some elements of the frame . . . can be spring elements and some elements can be flexible without inherent spring characteristics." ('208 patent, col. 7:52-55) Importing the "spring characteristics" limitation from the specification to the claims would also raise issues of claim differentiation because dependent claims 15 and 17 disclose "spring constant" and "spring function," respectively, whereas independent claim 13 does not expressly disclose spring characteristics. ('208 patent, col. 22:34-57)

I recommend that the court construe SDMP to require a "different composition." Minerva alleges that "different composition" is optional because the "dissimilar material properties" claim language may also refer to different treatments. (D.I. 118 at 11) However, the specification of the '208 patent focuses on the different chemical compositions of NanoFlex® and 304 SS and 316 SS, indicating that "[t]he use of dissimilar frame materials allows for the frame to expand . . . with lateral sides being relatively linear instead of being deeply bowed inwardly." ('208 patent, col. 19:48-50) References to "dissimilar frame materials" in the specification signify a difference in composition. (D.I. 110 at ¶¶ 17, 19-23) Because the composition of NanoFlex is different from the compositions of 304 SS and 316 SS, and the parties do not dispute that composition is a material property, SDMP requires a "different composition."

I recommend that the court reject Minerva's proposal to include "treatment" in the construction of SDMP.[1] The specification does not discuss how a treatment is applied to a material, nor does it identify frame elements that have undergone different treatments. (D.I. 110 at ¶ 26) The specification describes NanoFlex as a precipitation hardenable stainless steel, but it does not describe the process of precipitation hardening. ('208 patent, col. 19:44-48) Instead, the specification refers to NanoFlex as a "dissimilar material" or a "dissimilar frame material." (*Id.* at 19:35-38; 19:48-50) The record evidence indicates that it is the chemical composition of NanoFlex, not a treatment, that makes it a "precipitation hardenable" material. (D.I. 110 at ¶ 22; D.I. 122, Ex. 1 at 122:18-124:7)

I recommend that the court reject Minerva's proposal to include "width" in the construction of SDMP. Although the specification sets forth a specific range of widths for the outer frame elements, the specification does not disclose a dissimilar range of widths for the inner frame elements. ('208 patent, col. 19:32-44) Instead, the specification emphasizes differences in the thickness of the inner and outer frame elements. (*Id.*) The specification lacks a disclosure of a dissimilarity in width between the inner and outer frame elements.

---

[1] Minerva proposed including the "treatment" limitation in its construction at the preliminary injunction stage. (D.I. 80 at 3) At that time, Minerva indicated that the treatment referred to a photochemical etching procedure ("PEP"). (*Id.* at 5) The Northern District of California rejected Minerva's proposal, concluding that improvements resulting from PEP "have nothing to do with the distinctive surface properties of the inner element." (*Id.* at 6) Now, Minerva contends that "treatment" refers to the precipitation hardening process applied to NanoFlex. (D.I. 106 at 9)

## B. "dissimilar material properties" ('208 patent, claims 13, 14, 15, 17, 19, 20, 22)

| Minerva | Hologic | Court |
| --- | --- | --- |
| Must be construed as part of the full term "substantially dissimilar material properties" per above | "different thickness and different composition" | Must be construed as part of the full term "substantially dissimilar material properties" per above |

I recommend that the court adopt Minerva's proposal, which is supported by the specification. For the reasons set forth at § IV.A, *supra*, the term "substantially dissimilar material properties" is not indefinite. The court finds no reason to construe this phrase separately from the construction of "substantially dissimilar material properties."

## C. "the inner elements have a higher spring constant than the outer elements" ('208 patent, claim 15)

| Minerva | Hologic | Court |
| --- | --- | --- |
| "the inner elements require more force to bend than do the outer elements" | "the inner elements need more force to bend the same distance than the outer elements" | "the inner elements need more force per unit distance bent than the outer elements" |

During the January 23, 2019 *Markman* hearing, the parties reached agreement that the disputed term should be construed as follows: "the inner elements need more force per unit distance bent than the outer elements."[2] (1/23/19 Tr. at 70:22-72:3) I recommend that the court adopt the parties' agreed-upon construction.

---

[2] Counsel explained that "spring constant" refers to the ratio of the force applied to a spring to the distance that the spring is displaced in response to that force to measure the stiffness or flexibility of the spring. The lower the spring constant, the more flexible the material. (1/23/19 Tr. at 65:14-66:1)

12

### D. "surface"[3] ('208 patent, claims 13, 14, 15, 17, 19, 20, 22)

| Minerva | Hologic | Court |
|---|---|---|
| Plain and ordinary meaning (no construction necessary) Alternatively: "exterior layer that covers the frame of the working end" | "two-dimensional area on a structure" | "exterior layer that covers the frame of the working end" |

I recommend that the court adopt Minerva's proposed construction and construe "surface" to mean "exterior layer that covers the frame of the working end." Minerva's proposal finds support in the language of claim 13, which recites that "the frame has flexible outer elements in lateral contact with the compliant surface." ('208 patent, col. 22:41-42) Because the frame elements must be in lateral contact with the surface, the claimed surface cannot constitute the outside of the layer covering the frame. Claim 13 also requires the surface to be "expandable to a selected planar triangular shape configured for deployment to engage the walls of a patient's uterine cavity." (*Id.*, col. 22:38-40) Therefore, to give meaning to the term "surface" in claim 13, the surface cannot be limited to the inner layer covering the frame.

Minerva's proposed construction is further supported by the specification of the '208 patent, which provides that "the energy-delivery surface comprises a thin-walled elastomer, such as a silicone elastomer." ('208 patent, col. 2:30-32) In this manner, the specification equates the claimed "surface" with the thin-walled, silicone elastomer. The embodiments described in the specification illustrate that the outer frame elements are in contact with the inside of the material

---

[3] The parties agree that the adopted construction for the term "surface" will apply to the word "surface" in the claim terms "compliant . . . surface" and "the outer surface expandable," both of which are found in claims 13, 14, 15, 17, 19, 20, and 22. (D.I. 102 at 2 n.1)

covering the frame elements. (*Id.*, Figs. 5, 9, 10, 19A, 19B, and 21) Given that the outer portion of the material covering the frame elements must make contact with the walls of the uterine cavity, Hologic's proposed construction would exclude the embodiments identified in the specification of the '208 patent.[4] The law is well-established that "[a] claim construction that excludes a preferred embodiment is 'rarely, if ever, correct.'" *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1304 (Fed. Cir. 2015) (quoting *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007)). Minerva's proposed construction is consistent with Federal Circuit precedent holding that, "where the claim language permits an operable construction, the inoperable construction is wrong." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 972 (Fed. Cir. 2018) (citing *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1345 (Fed. Cir. 2009)).

## V. CONCLUSION

For the reasons set forth above, I recommend that the court construe disputed terms as follows:

| Claim Term | Recommended Construction |
|---|---|
| "substantially dissimilar material properties" | "the inner and outer frame elements have different thickness and different composition" |
| "dissimilar material properties" | Must be construed as part of the full term "substantially dissimilar material properties" per above |
| "the inner elements have a higher spring constant than the outer elements" | "the inner elements need more force per unit distance bent than the outer elements" |
| "surface" | "exterior layer that covers the frame of the working end" |

---

[4] Hologic argues that the claimed surface may be either the outer or inner surface, but it cannot encompass both. (1/23/19 Tr. at 62:20-21) As a result, Hologic alleges that the claim is inoperable because only the outer surface engages the walls of the cavity, and only the inner surface is in lateral contact with the outer frame elements. (*Id.* at 62:20-63:7)

14

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 26, 2019

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE