**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| MINERVA SURGICAL, INC., | |
| Plaintiff, | C.A. No. 18-217-JFB-SRF |
| v. | **JURY TRIAL DEMANDED** |
| HOLOGIC, INC., AND CYTYC SURGICAL PRODUCTS, LLC, | |
| Defendants. | |

**PLAINTIFF MINERVA SURGICAL, INC.'S OPPOSITION TO**
**DEFENDANTS' MOTION TO STAY**

*Of Counsel*:

Vera M. Elson
Dale R. Bish
Christopher D. Mays
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300
velson@wsgr.com
dbish@wsgr.com
cmays@wsgr.com

Edward G. Poplawski
Olivia M. Kim
Erik J. Carlson
Neil N. Desai
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, 15th Floor
Los Angeles, CA 90071
(323) 210-2900
epoplawski@wsgr.com
okim@wsgr.com
ecarlson@wsgr.com
ndesai@wsgr.com

Dated: April 29, 2021

Ian R. Liston (#5507)
Jennifer A. Ward (#6476)
WILSON SONSINI GOODRICH & ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
iliston@wsgr.com
jward@wsgr.com

*Counsel for Plaintiff Minerva Surgical, Inc.*

## **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     STATEMENT OF FACTS AND THE NATURE AND STAGE OF THE
        PROCEEDINGS ........................................................................................................... 4

        A.      This Case Had Already Advanced to the Pretrial Stage When the COVID-19
                Pandemic Hit ..................................................................................................... 4

        B.      The Case Resumed in October 2020 When the Court Set a New Trial Date ......... 5

        C.      The Unrelated Minerva I Case ............................................................................ 6

        D.      The Unrelated Minerva III Case ......................................................................... 7

III.    ARGUMENT ................................................................................................................ 8

        A.      A Stay Will Not Simply the Issues for Trial ....................................................... 9

        B.      The Status of Litigation Strongly Disfavors a Stay ............................................ 12

        C.      A Stay Will Cause Undue Prejudice to Minerva and Allow Hologic to Gain a
                Clear Tactical Advantage .................................................................................. 16

IV.     CONCLUSION ............................................................................................................ 20

## **TABLE OF AUTHORITIES**

**CASES**                                                                                    **PAGE(S)**

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
    C.A. No. 15-1168-LPS, 2021 WL 616992 (D. Del. Feb. 17, 2021) ............................10, 14

*Bagwell v. Brewington–Carr*,
    C.A. No. 97-321-GMS, 2000 WL 1728148 (D. Del. Apr. 27, 2000) ..........................16, 19

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
    No. CIV. 08-63-SLR, 2010 WL 3522327 (D. Del. Sept. 2, 2010) ........................12, 17, 18

*Bos. Sci. Corp. v. Cordis Corp.*,
    777 F. Supp. 2d 783 (D. Del. 2011) ...............................................................................12

*Brit. Telecomms. PLC v. IAC/InterActiveCorp*,
    C.A. No. 18-366-WCB, 2020 WL 5517283 (D. Del. Sept. 11, 2020) ...............................14

*Cooper Notifications, Inc. v. Twitter, Inc.*,
    C.A. No. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ............................16, 17

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
    734 F. Supp. 656 (D. Del. 1990) ...........................................................................8, 16, 19

*FMC Corp. v. Summit Agro USA, LLC*,
    No. CV 14-51-LPS, 2014 WL 3703629 (D. Del. July 21, 2014) ..................................9, 17

*Gold v. Johns-Manville Sales Corp.*,
    723 F.2d 1068 (3d Cir.1983) ..........................................................................................8, 9

*Hologic, Inc. v. Minerva Surgical, Inc.*,
    764 F. App'x 873 (Fed. Cir. 2019) ....................................................................................6

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,
    No. CA 12-054-GMS-MPT, 2013 WL 663535 (D. Del. Feb. 25, 2013),
    *report and recommendation adopted*, No. CIV.A. 12-054-GMS, 2013 WL
    1743854 (D. Del. Apr. 22, 2013) ....................................................................................16

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)........................................................................................................8, 9

*Mission Abstract Data L.L.C. v. Beasley Broad. Group, Inc.*,
    C.A. No. 11–176–LPS, 2011 WL 5523315 (D. Del. Nov. 14, 2011)...............................16

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
    C.A. No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013)................................17

*Nokia Corp. v. Apple Inc.*,
   No. CA 09-791-GMS, 2011 WL 2160904 (D. Del. June 1, 2011).....................................9

*Oracle Corp. v. Parallel Networks, LLP*,
   No. CIV. 06-414-SLR, 2010 WL 3613851 (D. Del. Sept. 8, 2010) .....................12, 13, 19

*Pact XPP Schweiz AG v. Intel Corp.*,
   C.A. No. 19-1006-JDW, D.I. 277 (D. Del. Nov. 5, 2020)................................................15

*Princeton Dig. Image Corp., v. Konami Digital Entertainment Inc.*,
   C.A. No. 12-1461-LPS-CJB, 2014 WL 3819458 (D. Del. Jan. 15, 2014) ......................18

*SenoRx, Inc. v. Hologic, Inc.*,
   No. CIV.A. 12-173-LPS, 2013 WL 144255 (D. Del. Jan. 11, 2013) .........................13, 17

*St. Clair Intell. Prop. Consultants v. Sony Corp.*,
   No. CIV.A. 01-557JJF, 2003 WL 25283239 (D. Del. Jan. 30, 2003) .............................12

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*,
   193 F. Supp. 3d 345 (D. Del. 2016)................................................................................18

*Vehicle IP, LLC v. Wal-Mart Stores, Inc.*,
   C.A. No. 10-503-SLR, 2010 WL 4823393 (D. Del. Nov. 22, 2010)................................16

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014)......................................................................................20

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Minerva Surgical, Inc. ("Minerva") filed this case (Minerva II) in April 2017 to enforce its patent rights against Defendants Hologic, Inc. and Cytyc Surgical Products, LLC's (collectively, "Hologic").  Hologic's brief leads with irrelevant and one-sided characterizations of two other cases between the parties (Minerva I and Minerva III).[1]  The Court recently stayed Minerva III, which made sense in that Minerva I and III are related cases that assert the same Hologic patent now on appeal at the U.S. Supreme Court.[2]  But neither is related to the present case, Minerva II, which asserts a different Minerva patent against a Hologic product.  Indeed, six months before Hologic's stay motion, Hologic represented to the Court that this case "is not related [to Minerva III] because it involves a different patent and different accused product." Minerva III, D.I. 17 at 1.  Short on legitimate reasons for now conjoining the Minerva III case (now stayed) with the present case, Hologic devotes much of its brief to arguing the ***merits*** of the various cases; for example, by thematically painting this case as merely "retaliatory."  *See* D.I. 323 (Opening Brief ("Op. Br.")) at 1.  While Minerva obviously disagrees with Hologic's characterizations, Hologic's discussion of the merits are largely irrelevant in the context of a motion to stay.

The Minerva I and III cases have no overlapping issues for trial with this case and are irrelevant to the stay analysis.  Notably, Hologic's motion follows on the heels of an adverse event; namely, the Court's recent grant of Minerva's Motion to Stay the Minerva III case

---

[1] For ease of reference, Minerva uses the same chronological designations that Hologic uses in its Opening Brief:  *Hologic, Inc, et al. v. Minerva Surgical, Inc.*, C.A. No. 15-1031-JFB-SRF ("Minerva I");  this action ("Minerva II"); and *Hologic, Inc, et al. v. Minerva Surgical, Inc.*, C.A. No. 20-925-JFB-SRF ("Minerva III").  These designations are not intended to indicate any relationship between these cases other than the sequence in which they were filed.

[2] Specifically, Hologic's '348 patent, the validity of which is currently on appeal at the U.S. Supreme Court.  Minerva I also involved a second Hologic patent, the '183 patent, affirmed invalid by the Federal Circuit in 2019.

pending exhaustion of the appeal in Minerva I.  Thus, the timing of Hologic's Motion supports an inference that Hologic merely seeks a tactical advantage in disrupting and further delaying Minerva's case against it—a fact that weighs against a stay.  In this case, Minerva promptly sought relief and sued Hologic in April 2017 only two months after Hologic announced the launch of the accused product in this case.  D.I. 1, ¶ 16.  It was Hologic's launch of an infringing product that gave rise to this case.

Nor does the regrettable disruption in 2020 of the schedule in this case due to the pandemic (which is no one's fault) justify any further delay in Minerva getting to trial.  Hologic incorrectly portrays the previous stays of this case due to the COVID-19 pandemic as unnecessary and at "Minerva's request."  Op. Br. at 1.  But Hologic ***joined*** each request to the Court to stay the case and repeatedly ***stipulated in writing***:

> due to the circumstances surrounding the COVID-19 pandemic, including various Shelter in Place Orders in the states and the counties where the parties and their attorneys are located (e.g., California and Massachusetts), ***the parties***[3] are severely impacted in ***their abilities*** to prepare for trial, including inability to travel and meet in-person.

D.I. 310 (04/06/20 Stipulation re Stay) at 1; *see also* D.I. 311 (05/29/20 Joint Status Report and Stipulation) at 1; D.I. 312 (07/24/20 Joint Status Report and Stipulation) at 1; D.I. 313 (09/25/20 Joint Status Report and Stipulation) at 1.  For Hologic to now suggest that Minerva unilaterally requested a stay, or that Hologic intended to proceed with trial preparation—or that it even would have been feasible—is not consistent with its above representations to the Court.  While Hologic argues that "most other litigants in this country were able to continue pressing their claims" (Op. Br. at 1), this District's COVID-19 orders show that a July 2020 trial was not feasible.   06/22/20 Standing Order Re: Criminal and Civil Jury Selections and Jury Trials (extending cancellation of jury trials through July 31, 2020).

---

[3] All emphasis added unless indicated otherwise.

When Hologic finally turns to the relevant stay factors, its Motion is revealed to lack merit.  Indeed, each stay factor weighs heavily against a stay.  To summarize:

***First***, there is no potential simplification of ***issues for trial***, which is the proper focus of the first stay factor.  Hologic advances an irrelevant "back-to-back" trials theory with no supporting authority.  Its theory is irrelevant because it is based on the unrelated Minerva I and Minerva III cases, which have no overlapping substantive issues for trial.  Moreover, contrary to Hologic's assertion, back-to-back trials would not be more efficient or less burdensome for Minerva, whose smaller size makes it much harder to find the resources to cover for a month-long absence of its senior leadership.  Nor does Hologic even address the scenario that, if Minerva prevails in its appeal of Minerva I, there will never be a Minerva III trial.

***Second***, this case is at an advanced stage and both parties are working towards pretrial exchanges set to begin in less than a month.  Discovery is complete.  Dispositive and *Daubert* motions are fully briefed.  Trial is set to begin on August 9, 2021, only slightly over three months from when this Motion is fully briefed.  This advanced stage of the litigation clearly weighs against a stay.  The current trial date was set recently, and the Court's most recent COVID-19 Standing Order indicates jury trials may resume.  No further delay is warranted.

***Third***, a further stay would be unduly prejudicial to Minerva.  The parties are direct competitors.  Unlike the stay granted in Minerva III where Hologic's patent was long expired, Minerva's patent remains viable and in full force.  Minerva was diligent in filing this case two months after Hologic announced the launch of its accused product, and Minerva sought a preliminary injunction.  Thus, Minerva will be unduly prejudiced by any further delay in its opportunity to seek damages and injunctive relief if it prevails at trial.  In contrast, the timing of

Hologic's Motion follows a recent adverse event in its unrelated case against Minerva, indicating that it seeks an improper tactical advantage in further delaying resolution of Minerva's case.

## II.   STATEMENT OF FACTS AND THE NATURE AND STAGE OF THE PROCEEDINGS

### A.   This Case Had Already Advanced to the Pretrial Stage When the COVID-19 Pandemic Hit

Minerva filed this patent case against Hologic on April 11, 2017 asserting U.S. Patent No. 9,186,208 ("Minerva's '208 patent") against Hologic's NovaSure ADVANCED Impedance Controlled Endometrial Ablation System ("NovaSure ADVANCED").  D.I. 1.  The parties completed Fact Discovery and Expert Discovery by the deadlines of May 22, 2019 and November 8, 2019, respectively.  D.I. 128 at 2; 01/25/19 Order approving D.I. 128; D.I. 195 at 2; 11/05/19 Order approving D.I. 195.  The parties completed briefing on Dispositive and *Daubert* Motions on February 11, 2020.  D.I. 128 at 2.  When the parties completed Dispositive and *Daubert* Motion briefing, this case was on track for a July 20, 2020 trial.  D.I. 98 at ¶ 14.

But then the COVID-19 pandemic hit.  Recognizing the severe impact that the COVID-19 pandemic had on the parties' ability to prepare for trial, the parties ***jointly*** stipulated to and requested a stay.  D.I. 310 (04/06/20 Stipulation re Stay) at 1.  Indeed, by this time, the District of Delaware had cancelled all jury trials scheduled to begin before April 30, 2020.  03/18/20 Standing Order.  On April 7, 2020 (less than four months before the original trial date), this Court stayed this action accepting the parties' stipulation.  04/07/20 Order approving D.I. 310.

In subsequent status reports to the Court, the parties stipulated and jointly requested further stays due to the continuing COVID-19 pandemic.  D.I. 311 (05/29/20 Joint Status Report and Stipulation) at 1; D.I. 312 (07/24/20 Joint Status Report and Stipulation) at 1; D.I. 313 (09/25/20 Joint Status Report and Stipulation) at 1.  Meanwhile, the District of Delaware periodically revised its COVID-19 Standing Order, cancelling jury trials through September 15,

2020.  04/17/20 Revised Standing Order at ¶ 2 (extending continuances through May 31, 2020);
05/27/20 Revised Standing Order at ¶ 2 (through June 30, 2020); 06/22/20 Standing Order Re:
Criminal and Civil Jury Selections and Jury Trials (through July 31, 2020); 07/16/20 Standing
Order Re: Criminal and Civil Jury Selections and Jury Trials (through August 31, 2020);
09/01/20 Standing Order Re: Criminal and Civil Jury Selections; Jury Trials; and Transition to
Phase 2 (through September 15, 2020).

### B.    The Case Resumed in October 2020 When the Court Set a New Trial Date

On September 25, 2020, the parties jointly requested that the Court schedule "a trial date
for the earliest date that the Court in its discretion deems it practical and feasible to conduct an
in-person jury trial in this matter in or after February 2021, such that the ***parties can resume the***
***pre-trial activities*** at the point where they were halted due to the pandemic."  D.I. 313 (Joint
Status Report and Request for New Trial Date) at 2.  The parties' joint request followed the
District's September 1, 2020 Standing Order, which stated that "the District will begin to operate
under Phase 2 of the Re-Opening Guidelines on September 15, 2020.  Phase 2 permits the Court
to conduct jury trials, at the discretion of the presiding judge in each individual case, subject to
constraints imposed by limited resources and building space."  09/01/20 Standing Order RE:
Criminal and Civil Jury Selections; Jury Trials; and Transition to Phase 2 at ¶ 3.

On October 20, 2020, the Court set a new trial date of August 9, 2021 "subject to
courtroom availability and the priority of other trials previously scheduled ahead of it."  10/20/20
Oral Order.  The Court's August 9, 2021 trial date accommodated Hologic's request—which
Minerva did not oppose—for a trial date after July 2, 2021 to address a scheduling conflict of
Hologic's lead and co-lead counsel.  D.I. 315 at 1.  The parties submitted a Stipulated Amended
Scheduling Order on October 20, 2020 with the August 9, 2021 trial date, which the Court
adopted on October 21, 2020.  D.I. 316; 10/21/20 Order adopting D.I. 316.  The Amended

Scheduling Order included stipulated dates for pretrial exchanges beginning on May 21, 2021. D.I. 316 at 2.

In its brief, Hologic argues that after the stay was lifted "nothing else has occurred in this case." Op. Br. at 1. But Minerva has already begun work on its pretrial disclosures due May 21, 2021 and expects that Hologic has as well, given the substantial amount of work involved in preparing such disclosures. Indeed, Hologic's counsel recently emailed Minerva to address the format and substance of such exchanges. Ex. 1[4] at 1 (04/23/21 email from R. Casamiquela), 2 (04/19/21 email from A. Rajani).

C.     **The Unrelated Minerva I Case**

The first unrelated case between the parties currently still pending before the Supreme Court is: *Hologic, Inc, et al. v. Minerva Surgical, Inc.*, C.A. No. 15-1031-JFB-SRF (Minerva I). In Minerva I, Hologic tried two patents: U.S. Patent No. 6,872,183 ("Hologic's '183 patent") and U.S. Patent No. 9,095,348 ("Hologic's '348 patent") against the original handpiece of Minerva's Endometrial Ablation System. The trial in that case occurred in July of 2018 shortly before Hologic's '348 patent expired on November 19, 2018. In April of 2019, Hologic's '183 patent was affirmed invalid by the Federal Circuit, exhausting the appeals for that patent. *Hologic, Inc. v. Minerva Surgical, Inc.*, 764 F. App'x 873, 875 (Fed. Cir. 2019). However, whether assignor estoppel bars Minerva from contesting the validity of Hologic's '348 patent remains at issue on appeal. Ex. 2 (Minerva's SCOTUS Merits Brief) at (i). The Supreme Court granted Minerva's cert petition as to Hologic's '348 patent on January 8, 2021 and recently held oral argument on April 21, 2021. Ex. 3 (SCOTUS Docket No. 20-440) at 2, 4.

---

[4] "Ex. _" refers to the exhibits to the Declaration of Erik J. Carlson, filed concurrently herewith.

D.      **The Unrelated Minerva III Case**

Another case between the parties that is pending before this Court is:  *Hologic, Inc, et al. v. Minerva Surgical, Inc.*, C.A. No. 20-925-JFB-SRF (Minerva III).  Minerva III is a follow-on case to Minerva I that Hologic filed in July of 2020, more than three years after Minerva filed this case against Hologic.  Minerva III, D.I. 1.  In Minerva III, Hologic asserts the same '348 patent from Minerva I against Minerva's redesigned handpiece.[5]  Thus, Minerva I and III are related and involve overlapping issues, but neither is related to this case (Minerva II).

Right out of the gate, in the first Proposed Scheduling Order and at the Rule 16 Scheduling Conference for Minerva III, Minerva requested a stay of Minerva III for several reasons: the sole asserted '348 patent had expired years earlier in November 2018; due to its expiration, Hologic could seek only five months of past damages, and no injunctive relief; and at the time Minerva was about to file its cert petition with the Supreme Court.  Minerva III, D.I. 13 at 5-6, 20; Minerva III, D.I. 21 at 15:3-13, 16:18-23.  Hologic initially sought an aggressive February 2021 trial date, which the Court rejected as "not feasible."  Minerva III, D.I. 21 at 14:24; *see also* Minerva III, D.I. 13 at 19.  Notably, in contrast to its position here (Op. Br. at 6), at the Scheduling Conference in Minerva III, Hologic did not express any COVID concerns with its initial proposed February 2021 trial date.  *See generally* Minerva III, D.I. 21.  Nor did Hologic suggest or propose that the trials in Minerva II and Minerva III should be held back-to-back.  *Id*.  To the contrary, shortly thereafter, Hologic represented to the Court that this case "is not related [to Minerva III] because it involves a different patent and different accused product."  Minerva III, D.I. 17 at 1.

---

[5] In the redesigned handpiece at issue in Minerva III, Minerva removed the claimed "pivot point" structure from its original design at issue in Minerva I.

On October 20, 2020, the Court set a trial date of August 23, 2021 in Minerva III. Minerva III, 10/20/20 Oral Order. At that time, the Court accommodated the reality of Minerva's cert petition by allowing Minerva to defer its invalidity contentions until after the exhaustion of Minerva's appeal to the Supreme Court. Minerva III, D.I. 20 at ¶ 2.b.v. The Court had previously expressed its preference to deal with the effect of Minerva's cert petition "in real time when the Supreme Court responds to that petition for cert." Minerva III, D.I. 21 at 24:20-25:2. The Supreme Court granted Minerva's cert petition on January 8, 2021 and Minerva promptly informed the Court of its intention to renew its request for a stay. Minerva III, D.I. 57. Minerva renewed its request by filing a motion to stay two weeks later. Minerva III, D.I. 60.

Hologic states that the Court ordered an accelerated schedule for Minerva III "given Hologic's request for an early trial in view of Minerva's concealment and willful infringement." Op. Br. at 1. But the Court did not identify "Minerva's concealment and willful infringement" as the basis for setting the August 23, 2021 trial date (now stayed). As the Court noted in granting Minerva's stay motion, the "scheduling order in [Minerva III] acknowledges the significant overlap between this action and prior lawsuits between the same parties." Minerva III, D.I. 122 (Stay Opinion) at 2.

Recently, on April 6, 2021, the Court granted Minerva's motion and stayed Minerva III until the exhaustion of all appeals in the Minerva I. Minerva III, D.I. 121. Only 6 days later, for the first time Hologic contacted Minerva to convey its intention to move to stay this case. Ex. 4 (04/12/21 email from R. Casamiquela) at 1.

## III.  ARGUMENT

When courts consider exercising their discretion to stay a case, "the Court must weigh the competing interests of the parties and attempt to maintain an even balance." *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990) (citing *Landis v. N. Am. Co.*, 299 U.S.

248, 254-55 (1936)).  In maintaining that even balance, the court must consider whether "there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir. 1983) (quoting *Landis*, 299 U.S. at 255).  If so, the stay movant must make a showing of "a clear case of hardship or inequity" before the court can enter a stay order.  *Id*. at 1075-76 (quoting *Landis*, 299 U.S. at 255) (internal quotation marks omitted).  The court's exercise of discretion should be guided by three factors: (1) whether a stay will simplify the issues for trial; (2) the status of the litigation, including whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage.  *Nokia Corp. v. Apple Inc.*, C.A. No. 09-791-GMS, 2011 WL 2160904, at *1 (D. Del. June 1, 2011).

Each of the stay factors weighs heavily against a stay and therefore Hologic's motion should be denied

### A.     A Stay Will Not Simply the Issues for Trial

The proper focus of the first factor—simplification of issues—is the substantive issues for trial, e.g., the specific claims asserted and the defenses to those claims.  *See e.g. FMC Corp. v. Summit Agro USA, LLC*, C.A. No. 14-51-LPS, 2014 WL 3703629, at *3 (D. Del. July 21, 2014).  Even if another proceeding involves the same parties and products, where "the legal issues at play . . . are substantially different," this factor "clearly disfavors a stay." *Id*. at *3-*4.

Hologic's argument that there is overlap between Minerva III and this case (Op. Br. at 1-2) is an about face from its position in Minerva III where Hologic represented to the Court that Minerva II "is not related [to Minerva III] because [Minerva II] involves a different patent and different accused product."  Minerva III, D.I. 17 at 1.  Indeed, the bases for the legal and factual issues in play here are substantially different, as shown in the chart on the next page:

| Issue | Minerva II | Minerva III |
|---|---|---|
| **Different Asserted Patent** | Minerva's '208 patent | Hologic's '348 patent |
| **Different Technology at Issue** | The design of the metal frame inside the distal end of Hologic's device (i.e., the end that performs the ablation) (Minerva's '208 patent) | Whether or not the hand grips in the handle of Minerva's device are attached via the claimed "pivot point." (Hologic's '348 patent) |
| **Different Accused Product** | Hologic's NovaSure ADVANCED | Minerva's Spring Handle design |
| **Different Claims** | Infringement, Hologic's willfulness, damages and injunctive relief associated with Minerva's '208 patent | Infringement, Minerva's willfulness, and damages associated with Hologic's expired '348 patent |
| **Different Defenses** | Noninfringement, invalidity, and equitable defenses for Minerva's '208 patent | Noninfringement, invalidity, and different equitable defenses for Hologic's '348 patent |
| **Different Procedural Posture** | Minerva is the plaintiff and patent owner | Minerva is the defendant and accused infringer |

Hologic fails to identify even one ***substantive trial issue*** (i.e., claim or defense) that will be simplified by a stay in this case, as opposed to being merely shifted out in time. There are none. Instead, Hologic strays from the proper analysis and argues that the first factor "is not to be considered in a theoretical or academic vacuum but with practical considerations in mind." Op. Br. at 4. Hologic relies on *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, C.A. No. 15-1168-LPS, 2021 WL 616992 (D. Del. Feb. 17, 2021) for this proposition. But *Am. Axle* involved a situation where ***patent eligibility of the same patent*** (i.e., the substantive issue for trial) was on appeal ***in the same case*** to the Supreme Court. 2021 WL 616992, at *1. In other words, unlike this case, *Am. Axle* involved ***overlapping issues for trial***. Here, neither the appeal in Minerva I nor the trial in Minerva III will have any effect on the disputed issues for trial in this case. Minerva I concerns Hologic's '348 patent, as well as the issues of assignor estoppel and the validity of Hologic's '348 patent. Assignor estoppel is not at issue in this case, nor is the validity

of Hologic's '348 patent.   Moreover, Minerva III has always been scheduled for trial **after Minerva II** and **involves infringement of a different patent and different accused product**—so the issues decided in Minerva III could not impact Minerva II.

Hologic further argues that because **witnesses** overlap, "judicial economy" favors a stay. Op. Br. at 4-5.  The first flaw in Hologic's argument is that it has failed to provide any authority for the notion that witness overlap is relevant to the stay analysis, which focuses on substantive issues for trial.   The second flaw is that Hologic presumes back-to-back trials will be more efficient for all parties and the Court.  But that is not true for Minerva and its witnesses.  Minerva is a much smaller company than Hologic.  Requiring Minerva's senior leadership to attend two consecutive trials on the East Coast—and the month-long continuous disruption of their responsibilities running the company, would be more burdensome than attending a single trial now, and coming to Delaware a second time later, if and when there is a second trial.  Hologic, on the other hand, surely has many employees to cover for its **single** employee witness—William Lucas Churchill—who Hologic plans to bring live in both this action and Minerva III.[6]  Op. Br. at 4.  Moreover, unlike Minerva' fact witnesses likely to testify live, who are located on the West Coast, Mr. Churchill is located on the East Coast.  Ex. 5 (Churchill LinkedIn page).  Hologic provides no authority for the suggestion that its preference for back-to-back trials is relevant to any stay factor.  Even if Hologic is able to more easily absorb a month-long absence of its one live employee fact witness, that does not support its request for a stay.

---

[6] In an April 23, 2021 email, Hologic identified Mr. Churchill as a witness that Hologic currently intends bring to testify live at the Minerva II trial.  Ex. 1 at 1 (04/23/21 email from R. Casamiquela).   Of the Hologic fact witnesses it identified as likely to testify at both trials, Hologic also identified Dr. Edward Evantash (Op. Br. at 4; Ex. 1 at 1), a former employee of Hologic.

Next, Hologic argues incorrectly that this case and Minerva III involve "many of the same issues." Op. Br. at 5. Here, *none* of what Hologic calls an "issue" (e.g., parties, products, technology, market, damages based on) is an overlapping *substantive issue for trial* under the applicable stay analysis. The District of Delaware has noted that a stay may be appropriate "when the only issues left for trial *completely* overlap" with those at issue in a parallel proceeding. *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, C.A. No. 08-63-SLR, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010). But absent a complete overlap, "a stay is disfavored." *Oracle Corp. v. Parallel Networks, LLP*, C.A. No. 06-414-SLR, 2010 WL 3613851, at *2 (D. Del. Sept. 8, 2010); *see also St. Clair Intell. Prop. Consultants v. Sony Corp.*, No. CIV.A. 01-557JJF, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003) (where another proceeding is unlikely to "do much to simply the issues that need to be tried," this factor weighs against a stay). Here, there is *no overlap in substantive issues* making a stay inappropriate.

The thrust of Hologic's argument is that because two unrelated cases were initially scheduled for "back-to-back" trials, a stay in the *later* case somehow justifies a stay in the *earlier* case. Hologic's argument is irrelevant to the stay analysis and unsupported by the only case it cites (addressed above). Nor is Minerva aware of any case ever accepting this type of argument.

Thus, the first factor weighs strongly against a stay.

**B.    The Status of Litigation Strongly Disfavors a Stay**

Here, both fact and expert discovery were done by November 2019, dispositive and *Daubert* motion briefing was completed over a year ago, trial is set for August 9, 2021, and the parties have begun pretrial preparations with the first exchanges due in less than a month on May 21, 2021. D.I. 316 at 2; 10/21/2020 Order adopting D.I. 316. Where discovery is complete and trial is imminent, "[t]he status of the litigation *clearly* cuts against a stay." *Bos. Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 788 (D. Del. 2011); *see also St. Clair Intell. Prop.*

*Consultants*, 2003 WL 25283239, at *1 (denying stay where motion was filed after the close of discovery and shortly before trial).  In cases like this one, "the Court and the parties have already expended significant resources on the litigation, and ***the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion.***" *SenoRx, Inc. v. Hologic, Inc.*, C.A. No. 12-173-LPS, 2013 WL 144255, at *5 (D. Del. Jan. 11, 2013).

Hologic's argument that this "case is in the ideal posture for a stay" (Op. Br. at 5) is another about-face from its position in Minerva III.  ***First***, Hologic directly contradicts its arguments opposing a stay in Minerva III.  Minerva III, D.I. 67 at 15-18.  When Minerva filed its stay motion, that case was at an even earlier stage than this one.  Expert discovery was ongoing and dispositive motions had not been filed.  *Id.* at 15.  In opposing Minerva's motion, Hologic argued that "[t]his case [Minerva III] is not at an efficient stopping point" and "[s]taying the case at this advanced juncture does nothing to obviate work that the parties would otherwise need to do to prepare for dispositive motions and/or trial." *Id.* at 18.

***Second***, Hologic argues that the trial date is "tentative."  Op. Br. at 5.  But this Court's most recent order regarding suspension of jury trials has declined to extend the suspension.  04/05/21 Notice.  And even if Hologic's argument is accepted, this Court has found that the status of the litigation factor "cuts against a stay" where fact and expert discovery have been completed even if no trial date has been set and issues remain for summary adjudication.  *Oracle Corp.*, 2010 WL 3613851, at *2.

***Third***, Hologic argues that COVID-19 supports a stay (Op. Br. at 6), but the relief Hologic seeks reveals its newly-found COVID concerns to be spurious.  The effect of Hologic's proposed relief would be that Minerva II is stayed until the stay lifts in Minerva III ***regardless*** of

the status of any COVID restrictions.  Thus, Hologic's purported COVID concern is not a valid reason to have Minerva II and III joined at the hip.  Moreover, Hologic completely fails to address the scenario that if Minerva prevails in its Minerva I appeal (i.e., Hologic's '348 patent is held invalid), then there may never be a trial in Minerva III (where Hologic's '348 patent is the only asserted patent), and any delay in Minerva III would have served no purpose other than to protract its resolution.  Hologic offers no proposal to address this scenario—suggesting gamesmanship is behind Hologic's request for a stay.  This supports an inference that the reason for Hologic's request is merely to avoid and delay trial in this case as long as possible.

*Fourth*, the cases Hologic cites regarding COVID-19 concerns are distinguishable.  *Am. Axle* was decided on February 17, 2021, less than two weeks after this District issued a Standing Order suspending all jury trials until on or after April 5, 2021.  02/05/21 Standing Order Re: Criminal and Civil Jury Trial Suspension.  No trial date had been set in *Am. Axle* at the time of the stay motion, and the court found that "***the combination of potential further appellate review*** and the ongoing impact of the coronavirus pandemic would render it imprudent to set a trial date at this time." *Am. Axle & Mfg.*, 2021 WL 616992, at \*2.  Hologic omits the emphasized language above from the quotation in its brief because ***there is no potential for further appellate review in Minerva II***.  The issue on appeal in Minerva I relates to assignor estoppel—which is not at issue here—and the invalidity of a completely different patent—also not at issue here.

*Brit. Telecomms. PLC v. IAC/InterActiveCorp*, C.A. No. 18-366-WCB, 2020 WL 5517283 (D. Del. Sept. 11, 2020) is also distinguishable.  In that case, expert discovery was yet to be completed and trial was set for November 30, 2020.  *Id*. at \*5.  Thus, not only was that case less advanced than the present case, but the trial was scheduled at a time when COVID-19 created much more uncertainty surrounding the feasibility of jury trials.  For example, *Brit.*

- 14 -

*Telecomms.* was decided months before FDA authorization of the first COVID-19 vaccine (Ex. 6) and at a time when this District's operative COVID-19 order had suspended all jury trials (09/01/20 Standing Order Re: Criminal and Civil Jury Selections; Jury Trials; and Transitions to Phase 2 at ¶ 1). As of April 28, 2021, more than 230 million doses of vaccine have been administered (Ex. 7) and this District has decided not to extend the suspension of jury trials (04/05/21 Notice).

*Pact XPP Schweiz AG v. Intel Corp.*, C.A. No. 19-1006-JDW, D.I. 277 (D. Del. Nov. 5, 2020) is distinguishable for similar reasons. D.I. 323-1. That case was not advanced as far as this case because expert discovery was not complete, trial was almost a year away, and the circumstances surrounding COVID-19 at the time of that decision rendered the feasibility of jury trials much more uncertain. *See id.* at ¶¶ 1, 6, 7 ("PTAB's final written decisions are scheduled to issue close to the scheduled trial date"); Ex. 8 (Scheduling Order in *Pact XPP Schweiz AG v. Intel Corp.*) at ¶ 18 (September 20, 2021 trial date).

**Lastly**, Hologic's reliance on Judge Fallon's statements during a Minerva III telephonic hearing is misplaced. Judge Fallon's comments were in the context of denying Hologic's request for a ***February 2021*** trial date in Minerva III, six months before trial is currently set in this case. Minerva III, D.I. 21 at 14:17-18 ("So I'll tell you upfront before I hear from Minerva, ***a February [2021] trial won't happen***"), 14:24 ("***February [2021] just is not feasible for a number of reasons***"). And the Court set the current trial date in this case ***after*** that telephonic hearing in Minerva III, likely accounting for the Court's feasibility concerns.

Therefore, the second factor also ways strongly against a stay.

### C.     A Stay Will Cause Undue Prejudice to Minerva and Allow Hologic to Gain a Clear Tactical Advantage

"The final, most substantial and important issue is prejudice." *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, C.A. No. 12-054-GMS-MPT, 2013 WL 663535, at *5 (D. Del. Feb. 25, 2013), *report and recommendation adopted*, C.A. No. 12-054-GMS, 2013 WL 1743854 (D. Del. Apr. 22, 2013).  "With respect to prejudice, the court must look to the competing interests of the parties, and determine if there is a 'fair possibility' that a stay would be detrimental to the opposing party." *Id*. at 5.  "If there is even a 'fair possibility' that a stay would prove detrimental to one of the parties, then the party requesting a stay must demonstrate that the denial of a stay would result in a 'clear case of hardship or inequity.'" *Bagwell v. Brewington– Carr*, C.A. No. 97-321-GMS, 2000 WL 1728148, at *20 (D. Del. Apr. 27, 2000) (quoting *Dentsply Int'l*, 734 F. Supp. at 658-59).

A stay will cause undue prejudice to Minerva in further prolonging a resolution of its case, thereby allowing Hologic to gain a clear tactical advantage in continuing to market and sell the infringing device.  ***First***, Minerva and Hologic are direct competitors in the global endometrial ablation treatments market, which Hologic identified as the "Market" in its brief. Op. Br. at 5.  Minerva diligently filed this case two months after Hologic released its new competing accused product.  D.I. 1 at ¶ 16.  It is well established that "[c]ourts are generally reluctant to stay proceedings where the parties are direct competitors." *Mission Abstract Data L.L.C. v. Beasley Broad. Grp., Inc.*, C.A. No. 11–176–LPS, 2011 WL 5523315, at *4 (D. Del. Nov. 14, 2011) (quoting *Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, C.A. No. 10-503-SLR, 2010 WL 4823393, at *2 (D. Del. Nov. 22, 2010)); *see also Cooper Notification, Inc. v. Twitter, Inc.*, No. CIV. 09-865-LPS, 2010 WL 5149351, at *5 (D. Del. Dec. 13, 2010) ("Courts are reluctant to stay proceedings where parties are direct competitors.").  "Courts have recognized that when the

- 16 -

parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *SenoRx*, 2013 WL 144255, at *7.

**Second**, Minerva's patent remains in force for eight more years (expiring on August 23, 2029) and it intends to seek injunctive relief if it prevails at trial. Minerva faces undue prejudice from a stay due to the delay of a trial and of Minerva's opportunity to seek injunctive relief. *See Cooper Notification*, 2010 WL 5149351, at *4 (patentee's "right to enforce the patent in the interim would be severely hindered."). Hologic disputes the substance of whether Minerva may ultimately secure injunctive relief by citing the preliminary injunction proceedings in this case. Op. Br. at 7. But those preliminary injunction proceedings do not support Hologic's argument— they undermine it. Seeking a preliminary injunction is a signal that the parties compete and that "real prejudice will flow from the imposition of a stay." *FMC Corp.*, 2014 WL 3703629, at *6 (internal quotation marks omitted) (quoting *Neste Oil OYJ v. Dynamic Fuels, LLC*, C.A. No. 12-1744-GMS, 2013 WL 3353984, at *4 (D. Del. July 2, 2013)); *see also Belden Techs*, 2010 WL 3522327, at *3 ("The request for a preliminary injunction may indicate the presence of this type of prejudice.").

**Third**, Minerva has already begun pretrial preparations, and it appears Hologic has as well. Ex. 1 at 1. Thus, the timing of Hologic's request at this late stage of the case is prejudicial to Minerva's "investment in trial preparation and does not comport with the notion of judicial efficiency." *Belden Techs.*, 2010 WL 3522327 at *2. Moreover, as explained above, a stay to reset this trial back-to-back with Minerva III will prejudice Minerva because it is a much smaller company than Hologic, and Minerva's senior leadership are expected to testify live at both trials.

- 17 -

Back-to-back trials will prolong the disruption and distraction for two members of Minerva's senior leadership from their responsibilities in running the company for a month.

**Fourth**, the timing of Hologic's request to stay, as well as its flip-flop in its positions from those in Minerva III (i.e., no mention of any relation between the cases, no COVID concerns, and the earlier stage of the case), supports an inference that Hologic "is seeking an inappropriate tactical advantage." *Id*. at *2. Hologic seeks back-to-back trials because that would be more efficient ***for Hologic***, which only has one employee witness expected to testify at both trials, to the prejudice of Minerva, which has two members of its senior leadership team likely to testify. Moreover, as noted above, if Minerva prevails in its appeal in Minerva III, there will never be a Minerva III trial; another reason why the two cases should not be coupled together as Hologic proposes.

If the timing of a request to stay the case "appears less focused on facilitating an orderly review of patent claim validity, and more focused on simply disrupting the progression of the non-movant's district court case for disruption's sake, that can weigh against a stay." *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, 193 F. Supp. 3d 345, 350 (D. Del. 2016); *cf. Princeton Dig. Image Corp. v. Konami Digital Entm't Inc.*, C.A. No. 12-1461-LPS-CJB, 2014 WL 3819458, at *5 (D. Del. Jan. 15, 2014) (a stay motion after an adverse case event suggests the movant seeks an inappropriate tactical advantage). This Court stayed Minerva III on April 6, 2021. Minerva III, D.I. 122 (Stay Opinion) at 1, 3. In stark contrast to Minerva's early request for a stay in Minerva III at the Rule 16 Conference (Minerva III, D.I. 13 at 5-6, 20; Minerva III, D.I. 21 at 16:18-23) and prompt renewal of its request after the Supreme Court granted Minerva's cert petition (D.I. 60), here, Hologic lay silent until it suffered an adverse case event. Less than a week after the Minerva III case was stayed, Hologic's counsel first raised Hologic's

intent to move to stay this case with Minerva.  Ex. 4 (04/12/21 email from R. Casamiquela) at 1. Indeed, the main premise of Hologic's Motion is the adverse event Hologic suffered when the Court granted a stay in Minerva III.  Op. Br. at 2 ("***Because Minerva III has been stayed***, the Court should also stay Minerva II").  Where the timing of a motion gives rise to such an inference of an inappropriate tactical advantage, this factor weighs against a stay.  *See Oracle Corp.*, 2010 WL 3613851, at *3.

*Fifth*, Hologic has failed to demonstrate that the denial of a stay would result in a "clear case of hardship or inequity."  *Bagwell*, 2000 WL 1728148, at *20 (quoting *Dentsply Int'l*, 734 F. Supp. at 658-59) (internal quotation marks omitted).  The only purported hardship identified in Hologic's Motion is the need for a later trip to Delaware for a single live employee witness. Hologic, Inc. is incorporated in Delaware and both Hologic Defendants are headquartered in Marlborough, Massachusetts. D.I. 1 at ¶ 3-4.  The two Hologic fact witnesses Hologic identified as likely to testify live at both trials—Mr. Churchill (current employee) and Dr. Evantash (former employee)—are located in the Massachusetts area.  Op. Br. at 4; Ex. 5 (Churchill LinkedIn page); Ex. 9 (Evantash LinkedIn page).  Moreover, Hologic has already filed two cases against Minerva in Delaware (Minerva I and Minerva III), and stipulated to a transfer of this case to Delaware (D.I. 85).  Hologic should not be heard to complain of any hardship or inequity in making two trips to Delaware instead of one.

*Sixth*, Hologic's primary argument—that "Minerva cannot show a need for expeditious resolution of its claims, as it already voluntarily stayed this case for six months" (Op. Br. at 7)— should be rejected.  Hologic joined each of the requests to the Court for a stay and repeatedly stipulated in writing that "***the parties*** are severely impacted in ***their abilities*** to prepare for trial, including inability to travel and meet in-person."  D.I. 310 (04/06/20 Stipulation re Stay) at 1;

D.I. 311 (05/29/20 Joint Status Report and Stipulation) at 1; D.I. 312 (07/24/20 Joint Status Report and Stipulation) at 1.  Hologic's suggestion that Minerva should have proceeded to a July 2020 jury trial during an unprecedented pandemic or risk having its case stayed is, thus, unreasonable.

*Lastly*, Hologic's remaining arguments should also be rejected.  Hologic cites *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318-19 (Fed. Cir. 2014) in arguing that a mere delay in damages or potential injunctive relief is not undue prejudice.  But that case is distinguishable because there, the patentee waited almost a year before filing suit and did not seek a permanent injunction.  *Id*. at 1319.  Thus, the Federal Circuit held the patentee's actions undermined its claims of undue prejudice.  *Id*.  Here, Minerva brought this patent infringement lawsuit only two months after Hologic started selling its new product.  Hologic also strays into the merits of infringement, citing its summary judgment motion.  Op. Br. at 7.  But Minerva opposed that motion and the motion remains pending.  It would be inappropriate to find no potential for undue prejudice simply because an accused infringer contests infringement during summary judgment.

In sum, like the previous two factors, the third factor weighs heavily against a stay.

## IV.    CONCLUSION

For the foregoing reasons, Minerva respectfully requests that the Court deny Hologic's Motion to stay this action.

*Of Counsel*:

Vera M. Elson
Dale R. Bish
Christopher D. Mays
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA  94304
(650) 493-9300
velson@wsgr.com
dbish@wsgr.com
cmays@wsgr.com

Edward G. Poplawski
Olivia M. Kim
Erik J. Carlson
Neil N. Desai
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, 15th Floor
Los Angeles, CA 90071
(323) 210-2900
epoplawski@wsgr.com
okim@wsgr.com
ecarlson@wsgr.com
ndesai@wsgr.com

Dated:  April 29, 2021

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI, P.C.

*/s/ Ian R. Liston*
Ian R. Liston (#5507)
Jennifer A. Ward (#6476)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
iliston@wsgr.com
jward@wsgr.com

*Counsel for Plaintiff Minerva Surgical, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Ian R. Liston, hereby certify that on April 29, 2021, I caused the foregoing **PLAINTIFF**

**MINERVA SURGICAL, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO STAY**

to be served via electronic mail upon the following counsel of record:

Karen L. Pascale
Pilar G. Kraman
YOUNG CONAWAY STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
kpascale@ycst.com
pkraman@ycst.com

*Counsel for Defendants Hologic, Inc. and
Cytyc Surgical Products, LLC*

Matthew M. Wolf
Marc A. Cohn
William Z. Louden
William O. Young, Jr.
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C.  20001-3743
matthew.wolf@arnoldporter.com
marc.cohn@arnoldporter.com
william.louden@arnoldporter.com
william.young@arnoldporter.com

Ryan Casamiquela
Marty Koresawa
ARNOLD & PORTER KAYE SCHOLER LLP
10th Floor, Three Embarcadero Center
San Francisco, CA  94111-4024
ryan.casamiquela@arnoldporter.com
marty.koresawa@arnoldporter.com

Assad Rajani
ARNOLD &PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA  94306-3807
assad.rajani@apks.com

*Counsel for Defendants Hologic, Inc. and
Cytyc Surgical Products, LLC*

 /s/ Ian R. Liston
Ian R. Liston (#5507)