## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MINERVA SURGICAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> HOLOGIC, INC., AND CYTYC SURGICAL PRODUCTS, LLC, <br><br> Defendants. | C.A. No. 18-217-JFB-SRF |

### REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO STAY

*Of Counsel:*

Matthew M. Wolf
Marc A. Cohn
William Z. Louden
William O. Young, Jr.
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
matthew.wolf@arnoldporter.com
marc.cohn@arnoldporter.com
william.louden@arnoldporter.com
william.young@arnoldporter.com

Ryan J. Casamiquela
Marty Koresawa
**ARNOLD & PORTER KAYE SCHOLER LLP**
3 Embarcadero Center
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
ryan.casamiquela@arnoldporter.com
marty.koresawa@arnoldporter.com

Assad Rajani
**ARNOLD & PORTER KAYE SCHOLER LLP**
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306
Telephone: (650) 319-4500
assad.rajani@arnoldporter.com

Karen L. Pascale (#2903)
Pilar G. Kraman (#5199)
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
kpascale@ycst.com
pkraman@ycst.com

*Attorneys for Defendants Hologic, Inc. and Cytyc Surgical Products, LLC*

May 6, 2021

## **TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | PRELIMINARY STATEMENT | | 1 |
| II. | ARGUMENT | | 3 |
| | A. | A Stay Will Conserve Judicial Resources | 3 |
| | B. | The Status Of The Litigation Favors A Stay | 7 |
| | C. | A Stay Will Not Unduly Prejudice Minerva Or Present A Tactical Advantage For Hologic | 8 |
| III. | CONCLUSION | | 10 |

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
   C.A. No. 15-1168-LPS, 2021 WL 616992 (D. Del. Feb. 17, 2021) ........................................... 5

*Brit. Telecommunications PLC v. IAC/InterActiveCorp*,
   C.A. No. 18-366-WCB, 2020 WL 5517283 (D. Del. Sept. 11, 2020) ........................................ 7

*C.R. Bard, Inc. v. Medical Components, Inc.*,
   C.A. No. 12-32-RJS-EJF, 2012 WL 6574663 (D. Utah Dec. 17, 2012) .................................... 4

*Hologic, Inc. v. Minerva Surgical, Inc.*,
   957 F.3d 1256 (Fed. Cir. 2020) ................................................................................................. 8

*In re Med. Components, Inc.*,
   535 F. App'x 916 (Fed. Cir. 2013) ........................................................................................ 5, 9

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*,
   193 F. Supp. 3d 345 (D. Del. 2016) .......................................................................................... 9

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014) .............................................................................................. 8, 9

Defendants Hologic, Inc., and Cytyc Surgical Products, LLC (collectively, "Hologic") respectfully submit this reply in further support of their motion to stay this matter (No. 18-217-JFB-SRF, "Minerva II") in view of the Court's recent decision to stay a related case (No. 20-925-JFB-SRF, "Minerva III") regarding the same technology, parties, products, and witnesses.

## I.   PRELIMINARY STATEMENT

Minerva's Opposition (D.I. 324) completely misses the point of Hologic's motion to stay. Originally, this case (Minerva II) and Hologic's new case against Minerva (Minerva III)[1] were set to proceed with trials back-to-back in August 2021. Once this Court stayed Minerva III on April 6, 2021 (in view of a Supreme Court appeal), then a stay of Minerva II became justified. Thus, the present motion to stay could also be viewed as a motion to postpone the trial until Minerva III has been re-scheduled, so that the trials can proceed back-to-back as originally set.

*First*, Minerva does not dispute that there is substantial overlap between this case and Minerva III: both patents-in-suit were invented by Csaba Truckai, and both cases involve the same parties, the same technology (endometrial ablation), the same products (Minerva's EAS and Hologic's NovaSure), the same market, and the same live witnesses with whom the Court may already be familiar from Minerva I (No. 15-1031-JFB-SRF), *e.g.*, David Clapper, Csaba Truckai, Dominique Filloux, Dr. Eugene Skalnyi, Dr. Robert Tucker, Blake Inglish, William Lucas Churchill, Dr. William Jamieson, and Karl Leinsing. In addition, rulings in one case could very well impact the presentation of evidence in the other case (*e.g.*, *in limine* rulings).

---

[1] As Hologic explained in its Opening Brief (*see* D.I. 323 at 1), it never should have had to file the Minerva III case to begin with because Minerva had concealed its commercialization of the accused product. Absent that concealment, Minerva's so-called "prototype" device would have been part of the 2018 trial, as it was not a "prototype" at the time despite Minerva telling the Court and Hologic otherwise. (*See generally* Minerva III, D.I. 106 at 1-2, 4-5.) Hologic thus had to file the Minerva III case in 2020 to recover damages for the sales that Minerva hid in 2018.

Scheduling the trials back-to-back thus serves judicial economy and efficiency and simplifies both proceedings because it would necessitate only one trip to Delaware by the parties, witnesses, and the Court (travelling from Nebraska). Minerva's assertion that two separate trials would be more convenient than back-to-back trials makes no sense. Given the logistics of travel, site setup, courtroom setup, and pre-trial motions and argument, the total time spent in Delaware would be far less with back-to-back trials—perhaps a full week less—versus having two separate trials with separate setup and teardown periods.

*Second*, the stage of this case further weighs in favor of a stay. Briefing on summary judgment and *Daubert* motions was completed in February 2020 and the case was stayed just two months later at Minerva's request. Since that stay was lifted in October 2020, nothing has happened except for the exchange of witness lists. To be sure, deadlines for pre-trial preparation are approaching, but a stay now (or postponement of trial) would give the Court more time to resolve the summary judgment and *Daubert* motions. This would almost certainly reduce the amount of pre-trial work and streamline the trial.

Indeed, a stay (or postponement of trial) is further justified by the stage of the case because it is particularly ripe for summary judgment. Minerva lost on claim construction, and it abandoned any literal infringement argument—because the "same" materials in Hologic's accused device could not possibly be "different" per the Court's construction. Minerva now attempts to circumvent the Court's construction by arguing that "same" is equivalent to "different." The purely legal question of whether such an argument is permissible (it is not because it vitiates, or renders meaningless, the Court's construction) has been fully briefed, and a postponement of the trial date or a stay of the case would give the Court time to resolve the issue. If it is resolved in Hologic's favor, then there would be no trial at all. If it is resolved in

Minerva's favor, then the trial can be re-scheduled to align with the Minerva III trial for the efficiency reasons described above. Either way, this case is at a stage where a stay would promote efficiency.

*Third*, Minerva would not be unduly prejudiced by a stay or postponement of trial. Minerva has not even attempted to show any irreparable harm from a stay for which it could not be compensated with money damages (*i.e.*, pre-judgment interest). Indeed, Minerva's preliminary injunction motion was soundly rejected in part because Minerva failed to show any irreparable harm during the pendency of the case. (D.I. 80 at 10.) Moreover, Minerva already requested a stay of its own case during the pandemic. Hologic, as the defendant, naturally agreed to this request, but Hologic's consent is beside the point—what matters is that Minerva requested the stay when it was not required to do so (other litigants continued to press their claims during the pandemic), and it could have moved its case closer to a trial-ready condition by working remotely like so many others have done. The fact that Minerva sought a stay shows that it would not be unduly prejudiced by waiting until the re-opening of Minerva III so that the two trials can be scheduled back-to-back, as they had been before Minerva III was stayed.

## II.   ARGUMENT

### A.   A Stay Will Conserve Judicial Resources

Minerva makes much of the fact that the claims in the asserted patents in Minerva II and Minerva III are different, but this is beside the point. There is still substantial overlap in the cases that Minerva does not dispute—they involve the same parties, technologies, products, markets, and witnesses, as shown in the table below from Hologic's opening brief:

| *Overlapping issues between Minerva II (this case) and Minerva III (stayed case)* | | |
|---|---|---|
|  | *Minerva II* | *Minerva III* |
| *Parties* | Minerva and Hologic | Hologic and Minerva |
| *Products* | Minerva's EAS and Hologic's NovaSure | Hologic's NovaSure and Minerva's EAS |
| *Technology* | Endometrial ablation | Endometrial ablation |
| *Market* | Global endometrial ablation treatments | Global endometrial ablation treatments |
| *Damages based on* | Minerva's and Hologic's sales | Minerva's and Hologic's sales |

(D.I. 323 at 5; *see id.* at 4-5; D.I. 324 at 11.)

Thus, Minerva II and Minerva III are like **claims and counterclaims in a single competitor suit**. In these circumstances, the defendant's counterclaims may be stayed when only the plaintiff's claims were the reason for the stay. For example, in *C.R. Bard, Inc. v. Medical Components, Inc.*, C.A. No. 12-32-RJS-EJF, 2012 WL 6574663 (D. Utah Dec. 17, 2012), "[b]oth parties favor[ed] a stay of [plaintiff's] claims" for which the PTO granted reexamination, but they "disagree[d] over whether the Court should also stay [defendant's] infringement counterclaim on [defendant's] patent-in-suit, which is not currently subject to reexamination by the USPTO." *Id.* at *1. **The court stayed the entire case** in part because "all of the patents at issue here share similar claim terms and similar prior art." *Id.* at *2-3. As in *C.R. Bard*, the patent claim terms in Minerva II and Minerva III are remarkably similar:

| '208 Patent Claim 13<br>(Minerva II) | '348 Patent Claim 1<br>(Minerva III) |
|---|---|
| an elongated shaft | an elongate member |
| working end | applicator head |
| expandable-contractable frame | deflecting mechanism |
| configured for deployment to engage the walls of a patient's uterine cavity | configured to conform to the shape of the uterus |
| flexible outer elements | first and second external flexures |
| flexible inner elements | first and second internal flexures |

4

(Ex. 2 at 22:34-45; Ex. 3 at 19:9-42.)² The patents in Minerva II and Minerva III also share a named inventor, Csaba Truckai. In addition, in Minerva II, one of the primary prior art references is U.S. Patent No. 6,813,520 (*see* Ex. 4 at 18, 21-24, 118-172), which shares the exact same specification as the '348 Patent asserted in Minerva III. Another prior art reference, U.S. Patent No. 5,769,880 (*see id.* at 21), shares the first half of the '348 Patent's specification (disclosing the first exemplary embodiment). The '348 Patent from Minerva III is also relevant to the damages expert reports in Minerva II because Hologic's damages expert in Minerva II relied on the '348 Patent royalty determination of Minerva's expert in Minerva I. (*See* Ex. 5 at 26-27, 75.) Thus, as in *C.R. Bard*, the recent stay of Minerva III justifies a stay of Minerva II.

Further, in *C.R. Bard*, the defendant filed a petition seeking a writ of mandamus directing the district court to vacate the portion of the stay order involving its counterclaims, which the Federal Circuit denied. *In re Med. Components, Inc.*, 535 F. App'x 916, 918 (Fed. Cir. 2013). The Federal Circuit held that "there is at least a plausible argument that can be made in light of the similarity of the prior art and technology that a stay of the entire matter could be more efficient than allowing the counterclaim alone now to go forward." *Id.* The same is true here—it would be far more efficient to stay or postpone the Minerva II trial so that it can proceed back-to-back with Minerva III once that stay is lifted in that case.

The Court in *American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*, C.A. No. 15-1168-LPS, 2021 WL 616992 (D. Del. Feb. 17, 2021), stated that the "simplification factor" includes the desire to "avoid[] the complexity and expenditure of resources." *Id.* at *2. Staying Minerva II so that the trials can run consecutively would reduce the complexity and expenditure of resources by simplifying the lives of most of the witnesses as well as the Court. Patent trials

---

² The Exhibits herein are attached to the accompanying Declaration of Marc A. Cohn.

typically involve a week of setup time, which permits witnesses, parties, and counsel to come to Delaware, build up their war rooms, prepare documents, binders, depositions, witnesses, demonstratives, presentations, and so on.  Doing this only once for both trials would save enormous resources and time.  Moreover, given the issues common between the two cases, it is likely that disputes presented to the Court in both cases (including, for example, *in limine* issues regarding the parties' sales and marketing practices) could be resolved at the same time at a single hearing.  The Court would also not have to refresh itself on all of the common issues prior to a second trial if the two trials were conducted back-to-back.  There are, therefore, substantial simplifications and efficiencies to be gained by staying Minerva II (or postponing the trial) so that the trial can be held consecutive with the Minerva III trial.

Minerva asserts that it is inconvenient for its witnesses to travel to Delaware.  (D.I. 324 at 3, 11.)  All the more reason to stay or postpone the Minerva II trial so it can run along with the Minerva III trial, to reduce the number of trips.  Minerva's complaint that back-to-back trials would impair Minerva's principals in doing their jobs should carry little weight, as the whole country has been working remotely for over a year, and Minerva's principals should be more than capable of continuing to conduct their business in Delaware while the trials are pending.

In any event, Minerva forum-shopped for this Court and cannot now be heard to complain about its convenience.  The Court may recall that Minerva originally brought its Minerva II case in California.  The court there rejected Minerva's motion for preliminary injunction in a strongly-worded ruling, holding that Minerva's "tortured position" on claim construction and infringement "breache[d] basic principles of claim construction," defied "common sense," and was based on features of the accused product that "have nothing to do with" the claims.  (D.I. 80 at 4, 6-7.)  Minerva then stipulated to a transfer out of that Judge's

court and into this Court. (D.I. 85.) Its argument in its Opposition that Delaware is inconvenient—despite Minerva being a Delaware corporation—should ring hollow in view of its blatant forum shopping.

### B. The Status Of The Litigation Favors A Stay

This case is at an ideal stage for a stay or postponement of trial, given that Minerva III has been stayed. The trial date here is merely tentative—as Magistrate Judge Fallon noted, the August 2021 trial date in this case is "subject to courtroom availability and the priority of other trials previously scheduled ahead of it." (Oct. 20, 2020 Oral Order; D.I. 316 at 1.) And, since the stay was lifted in October 2020, nothing has happened except for the exchange of witness lists. (*See* D.I. 325-1, Ex. 1 at 1-2.) Minerva did not press for an aggressive pre-trial schedule, and the first exchange of deposition designations still has not occurred (they begin on May 21, 2021). (*See* D.I. 316 at 2.) A stay or postponement now would simply preserve the status quo until the Minerva III stay is lifted and the trials can proceed consecutively.

Indeed, when this case was previously stayed (at Minerva's request) for six months from April to October 2020, it was in the same posture then as it is now, *i.e.*, dispositive and *Daubert* motions were fully briefed and the parties were waiting to begin pre-trial work. And even today, other than witness lists, no pre-trial exchanges have occurred. All that is left to do is to prepare for trial. This Court has granted a stay at a similar stage because "[w]hile there has been substantial progress in this case, the most burdensome parts of the case for the parties and the court—preparation for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future." *Brit. Telecommunications PLC v. IAC/InterActiveCorp*, C.A. No. 18-366-WCB, 2020 WL 5517283, at *5-6 (D. Del. Sept. 11, 2020).

Minerva argues that Hologic cannot seek a stay here because it opposed one in Minerva III (D.I. 324 at 13), which was not at an efficient stopping point. In that case, summary

7

judgment and *Daubert* briefing was still in process (opening briefs were filed, but oppositions had not been submitted). There is no such concern here, as dispositive and *Daubert* motions have been completed, and there is nothing left to do now but await the Court's decisions on those motions and prepare for trial.

Minerva argues further that Hologic does not address the scenario where Minerva prevails in its Minerva I Supreme Court appeal, such that there may never be a trial in Minerva III. (*Id.* at 13-14.) This is far-fetched, because even if the Supreme Court finds that assignor estoppel does not bar Minerva from challenging validity, this Court has already denied Minerva's invalidity defenses ***on the merits*** on summary judgment. (Minerva I, D.I. 407 at 24-26 (granting summary judgment of no invalidity "even if Minerva were not estopped from raising the defense"; "The court finds Minerva's Section 112 arguments rest on a flawed definition of the claims that ignores the court's claim constructions. . . . Hologic, on the other hand has shown that the '183 and '348 Patent disclosures adequately describe the claims as construed by the court.").) Not only would the Supreme Court need to reverse on assignor estoppel, but the Federal Circuit would also need to reverse this Court's separate summary judgment ruling on the merits of validity, despite having already affirmed on the merits of validity. Both of these scenarios occurring together is highly unlikely, particularly as the Federal Circuit affirmed this Court on every other aspect of its rulings (except interest). *Hologic, Inc. v. Minerva Surgical, Inc.*, 957 F.3d 1256, 1274 (Fed. Cir. 2020).

### C. A Stay Will Not Unduly Prejudice Minerva Or Present A Tactical Advantage For Hologic

In determining whether a plaintiff would suffer undue prejudice, this Court typically examines several factors, including whether the stay would inflict irreparable harm on a party. In *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307 (Fed. Cir. 2014), the Federal Circuit

8

reversed an order denying a motion to stay, despite the patentee arguing that "it needs injunctive relief as soon as possible to prevent irreparable harm to its business." *Id.* at 1318.  The Court held: "[W]hether the patentee will be *unduly prejudiced* by a stay . . . , like the irreparable harm-type inquiry, focuses on the patentee's need for an expeditious resolution of its claim.  A stay will not diminish the monetary damages to which [the patentee] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages and delays any potential injunctive remedy." *Id.* at 1318-19 (emphasis in original).  And in the *C.R. Bard* case discussed above, in which the district court stayed the plaintiff's claims and then stayed the defendant's counterclaims for purposes of efficiency, the Federal Circuit held in denying mandamus: "In addressing the comparative harms, the magistrate concluded that Medcomp had 'presented no evidence that a stay of its counterclaim would cause it harm that Bard could not compensate it for, either practically or theoretically.'" *In re Med. Components, Inc.*, 535 F. App'x at 918.

      Minerva has not attempted to show that it cannot be compensated with money damages for any harms (if any) due to a stay or postponement of trial in this case.  Indeed, when Minerva made a substantial effort to try to show such harm when it sought preliminary injunctive relief, it still utterly failed.  The California court found:

> Overall, Minerva's presentations on lost sales and business opportunities are too spare and unsupported to find irreparable harm.  Minerva's delay in filing this motion also undercuts a showing of irreparable harm.

(D.I. 80 at 10.)  The parties have already filed five motions for injunctive relief; all were denied. (*See* D.I. 80 at 12; Minerva I, D.I. 127 at 21; *id.*, D.I. 128 at 8; *id.*, D.I. 616 at 18-19.)  Minerva has not shown any undue prejudice from the requested stay or postponement of trial.

      The fact that Minerva and Hologic are competitors is far from sufficient to irreparable harm, as shown by the past denials of the parties' motions for injunctive relief.  *See Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, 193 F. Supp. 3d 345, 352 (D. Del. 2016)

9

(holding, even when "the parties compete for business against each other," "this subfactor weighed in favor of the requested stay, [where] money damages could adequately compensate the patentee for harm due to infringement"). In addition, Minerva's patent has eight years of life left (*see* D.I. 324 at 17); a brief stay will not significantly diminish any exclusivity period.

Minerva has already shown a lack of urgency in having its case tried. It voluntarily delayed the trial when it asked to stay this case for six months, which resulted in a more-than-one-year postponement in the trial date (from July 2020 to August 2021). Minerva notes that Hologic agreed to this stay and that the stay was necessary due to COVID-19 and was not really Minerva's decision. (*See id.* at 2, 4, 19-20.) Both arguments miss the point. Minerva could have continued to press its claims remotely and move its case closer to a trial-ready posture—something thousands of litigants across the country continued to do throughout 2020. The fact that it chose not to do so for six months—leaving much to do before trial that could have been done remotely last year—is evidence that Minerva is not being irreparably harmed and that it would not be unduly prejudiced by a stay.

### III.   CONCLUSION

For the foregoing reasons, Hologic respectfully requests that the Court grant Hologic's Motion and stay this action (or postpone trial) until the stay of Minerva III has been lifted.

<table>
<tr><td>

DATED: May 6, 2021

*Of Counsel:*

Matthew M. Wolf
Marc A. Cohn
William Z. Louden
William O. Young, Jr.
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
matthew.wolf@arnoldporter.com
marc.cohn@arnoldporter.com
william.louden@arnoldporter.com
william.young@arnoldporter.com

Ryan Casamiquela
Marty Koresawa
**ARNOLD & PORTER KAYE SCHOLER LLP**
3 Embarcadero Center
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
ryan.casamiquela@arnoldporter.com
marty.koresawa@arnoldporter.com

Assad Rajani
**ARNOLD & PORTER KAYE SCHOLER LLP**
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306
Telephone: (650) 319-4500
assad.rajani@arnoldporter.com

</td><td>

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903)
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
kpascale@ycst.com
pkraman@ycst.com

*Attorneys for Defendants, Hologic, Inc.
and Cytyc Surgical Products, LLC*

</td></tr>
</table>

11

# CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on May 6, 2021, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF (which will send notification that such filing is available for viewing and downloading to all registered counsel), and in addition caused true and correct copies of the foregoing document to be served upon the following counsel of record by electronic mail:

---

***Attorneys for Plaintiff Minerva Surgical, Inc.:***

| | |
|---|---|
| Ian R. Liston | iliston@wsgr.com |
| Jennifer A. Ward | jward@wsgr.com |

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
222 Delaware Avenue, Suite 800
Wilmington, DE 19801

| | |
|---|---|
| Vera M. Elson | velson@wsgr.com |
| Dale R. Bish | dbish@wsgr.com |
| Christopher D. Mays | cmays@wsgr.com |

**WILSON SONSINI GOODRICH & ROSATI**
650 Page Mill Road
Palo Alto, CA 94304-1050

| | |
|---|---|
| Edward G. Poplawski | epoplawski@wsgr.com |
| Olivia M. Kim | okim@wsgr.com |
| Erik J. Carlson | ecarlson@wsgr.com |
| Neil N. Desai | ndesai@wsgr.com |
| Ty W. Callahan | tcallahan@wsgr.com |

**WILSON SONSINI GOODRICH & ROSATI**
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071

---

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Karen L. Pascale*

May 6, 2021

Karen L. Pascale (No. 2903) *[kpascale@ycst.com]*
Pilar G. Kraman (#5199) *[pkraman@ycst.com]*
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600

*Attorneys for Defendants, Hologic, Inc. and Cytyc Surgical Products, LLC*

22963117.1